IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANONA DUFFY, et al., | : | |
|     Plaintiffs | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LAWYERS TITLE | : | No. 11-4503 |
| INSURANCE CO., | : | |
|     Defendant | : | |

**M E M O R A N D U M**

**Stengel, J.**                                                                                                                                                              February 23rd, 2012

      This action was brought against Lawyers Title Insurance Co. for Fraud and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") as the result of a "mortgage rescue scam." On October 10, 2011 defendant filed this motion to dismiss, which I will deny.

**I.**     **Background**

      In their Amended Complaint, plaintiffs allege they are victims of a series of foreclosure rescue scams, described as "equity skimming scams." (Amend. Compl. at ¶ 4). Plaintiffs claim that defendant, Lawyers Title Insurance Co., (hereinafter "Fidelity"),[1] is also the principal, insurer and underwriter of First County Abstract ("First County"),[2] and that these and other parties conspired to steal the equity in Plaintiffs' properties. (Amend. Compl. at ¶¶ 12-15, 17, 36). Specifically, Jeffrey Bennett and Steve Doherty

---

[1] Fidelity National Title Insurance Co. is acting in its own name and the as the entity in which Lawyers Title was merged.

[2] First County Abstract is a fictitious name filed in 2005 with the Commonwealth of Pennsylvania and is to be traded under Bennett & Doherty, P.C. (Amend. Compl. at ¶ 27).

functioned as title agents and as principals of Bennett & Doherty, P.C., a firm acting as an alter ego of and trading as First County.[3] (Amend. Compl. at ¶¶ 17, 25).

Plaintiffs include facts concerning their individual financial and foreclosure circumstances, but essentially each plaintiff was in the midst of a foreclosure action commenced by their respective lenders when the equity scams took place.[4] (Amend. Compl. at ¶ 12, 29-31). Plaintiffs claim that they had substantial equity in their homes and were attempting to avoid foreclosure through settlement conducted by First County. (Amend. Compl. at ¶ 31-37).

The Equity Skimming Scam

Plaintiffs allege that they were contacted by someone who told them that they could save their home from foreclosure by refinancing under a third party's name. (Amend. Compl. at ¶ 30). The third party was a "straw party" with good credit to act as the purchaser of the Plaintiffs' residences. Settlement for each transaction was scheduled with Bennett and Doherty, P.C. (Amend. Compl. at ¶ 51, 155, 165). Preceding settlement, First County, through Bennett, issued a preliminary HUD-1, settlement sheet, which set forth costs and showed a "cash-to-seller" payment illustrating the amount of

---

[3] Plaintiffs were referred to Bennett & Doherty, P.C., a law firm that also traded as title insurance agents for First County, a title insurance company.

[4] Individual plaintiffs include, Anona Duffy (Amend. Compl. at ¶¶ 50-75), John and Marie Iacovetti (Amend. Compl. at ¶¶ 76-88), George and Jorene Devlin (Amend. Compl. at ¶¶ 89-101), Kim Mellus Harak (Amend. Compl. at ¶¶ 102-115), Michael and Joann Lieber (Amend. Compl. at ¶¶ 116-123), Jose and Carmen Ortiz (Amend. Compl. at ¶¶ 124-141), Mark and Beverly Goldman (Amend. Compl. at ¶¶ 142-152), Susan Edge (Amend. Compl. at ¶¶ 153-163), William and Phyllis Kemp (Amend. Compl. at ¶¶ 163-173), and Tracey and John Vogt (Amend. Compl. at ¶¶ 174-183).

equity in each home.  (Amend. Compl. at ¶ 184).  This prompted the release of the settlement funds to Bennett and Doherty.  (Amend. Compl. at ¶ 168).

After the funds were released, First County, through Bennett, issued a phony final HUD-1, which reduced the proceeds paid to plaintiffs to zero.  (Amend. Compl. at ¶¶ 37, 185, 195).  Specifically, the defaulting mortgage was paid off through financing provided by J.P. Morgan Chase, who then obtained a new mortgage on the property.[5]  (Amend. Compl. at ¶¶ 35-36).  Lawyers Title Insurance, now Fidelity, issued title insurance through its agents, which insured the lien on the new mortgage.  (Amend. Compl. at ¶ 38, 171).  The proceeds of the new mortgage were then used to pay off the old mortgage and to satisfy other "obligations."  (Amend. Compl. at ¶ 35).  However, many of these obligations were phony, and the payments were diverted to third parties involved in the fraudulent scheme.  (Amend. Compl. at ¶ 36).

Defendant's Failure to Detect the Fraud

Plaintiffs claim that defendant was imputed with the knowledge of these scams through their agents, First County, Bennett, and Doherty, and that defendant must have audited at least one of these transactions and failed to identify the fraud.  (Amend. Compl. at ¶ 41-43).  At oral argument, plaintiff's counsel argued that defendant, as the underwriter, should have overseen their agents, and had a duty to disclose the fraud.  Plaintiffs also allege that defendant did not question, reject, investigate, or attempt to determine whether the HUD-1 transactions were scams.  (Amend. Compl. at ¶ 39).

---

[5] Plaintiffs allege that J.P. Morgan Chase was a successor in interest to Washington Mutual Bank, whose lender was Long Beach Mortgage a division of Washington Mutual Bank.  (Plaintiffs' Exhibit U at ¶¶ 18-27).

## II. Procedural Background

The content of the current Amended Complaint is very similar to a series of complaints filed by plaintiffs in Bucks County, including four other actions that have been stayed pending federal criminal proceedings.[6]  Plaintiffs filed the current action in the Court of Common Pleas of Bucks County, Pennsylvania naming Fidelity and Lawyers Title Insurance as separate defendants.  Fidelity filed a Notice of Removal on July 14, 2011.  Plaintiffs filed an Amended Complaint in response to defendant's first motion to dismiss.  Defendant then filed the current motion to dismiss and the parties argued the motion at oral argument on February 8, 2012.  For the reasons below, I will deny the motion to dismiss without prejudice to raise the arguments again on summary judgment.

## III. Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

---

[6] Stephen Doherty pleaded guilty to federal racketeering and bankruptcy fraud charges and Jeffrey Bennett pleaded guilty to federal racketeering charges.  (Amend. Compl. at ¶ 3).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

**IV.   Discussion**

1. Count I: Unfair Practices and Consumer Protection Law

The parties disagree as to whether plaintiffs can be considered purchasers under the UTPCPL. The "general purpose of the UTPCPL is to protect the public from fraud and unfair deceptive business practices." Burke v. Yingling, 666 A.2d 288, 291 (Pa. Super. Ct. 1995). Specifically, the UTPCPL protects a person who "purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result. . . ."[7] 73

---

[7] Of the twenty-one unfair or deceptive acts or practices, plaintiffs allege that the defendant violated P.S. § 201-2(4)(xxi), "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." This "catchall" provision has been recognized as applying to some residential real estate

P.S. § 201-9.2 (2011). The UTPCPL does not define "purchaser." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992). See, e.g., In re Barker, 251 B.R. 250, 261-62 (Bankr. E.D. Pa. 2000). However, courts have generally taken a broad approach to what constitutes a sale or a purchaser under the act. See e.g., Christopher v. First Mut. Corp., 2008 U.S. Dist. LEXIS 32781 (E.D. Pa. Apr. 21 2008).

Defendant argues the plaintiffs are not purchasers under the UTPCPL because plaintiffs were the sellers of property in various real estate transactions and as part of those transactions, Fidelity provided a title insurance policy to J.P. Morgan, not to plaintiffs. (Doc. #15 at 9). Plaintiffs argue that funds from their home's equity were used to purchase the title insurance and, therefore, even though they are not the insureds or the beneficiaries, they are indeed the purchasers. (Doc. # 16 at 12).

The case law is not clear as to whether the issue presented in this case – whether a person whose home's equity was allegedly used by one entity to purchase title insurance from a third party – makes that person a "purchaser" under the UTPCPL. Therefore, I decline to grant the defendant's motion to dismiss as a matter of law.

2. Count II: Civil Conspiracy

In order to establish liability for civil conspiracy, a plaintiff must show that: (1) two or more defendants conspired with a common purpose to do (a) an unlawful act, or

---

transactions. For example, the UTPCPL has been applied to loan refinancing. See e.g., In re Barker, 251 B.R. 250, 261 (Bkrtcy. E.D. Pa. 2000) (loan broker clearly violated UTPCPL by failing to disclose detrimental effect of refinancing loan).

(b) a lawful act by unlawful means or for an unlawful purpose;[8] (2) defendants committed an overt act in furtherance of the conspiracy; and (3) the plaintiff suffered legal damages. Weaver v. Franklin County, 918 A.2d 194, 202 (Pa. Commw. Ct. 2007). A claim for civil conspiracy cannot stand without some underlying tortious act that is independently actionable under Pennsylvania law. McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000).

Defendant argues that plaintiffs cannot maintain a civil conspiracy action because a conspiracy under Pennsylvania law cannot arise between a principal and its agent.[9] (Doc. # 15 at 10-11).[10] Plaintiffs cite the exception to the intracorporate conspiracy doctrine applicable when "the employees have acted for their sole personal benefit." Heffernan v. Hunter, et al., 189 F3d 405 (3d Cir 1999). Plaintiffs maintain that Bennett and Doherty acted for their own personal benefit when they received kickbacks outside their employment as title agents. (Doc. #16-2 at 20).

It is well-settled that a corporation cannot conspire with its subsidiaries, its agents, or its employees. Michael v. Shiley, Inc., 1994 U.S. Dist. LEXIS 1973, at * 46-47 (E.D.Pa. Feb. 25, 1994) (granting summary judgment to defendants on state law conspiracy claim involving alleged conspiracy between parent and subsidiary); Glessner

---

[8] Civil conspiracy requires an agreement and either a criminal act or intentional tort. See Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 406 (3d Cir. 2000) (applying Pennsylvania law and reversing judgment for civil conspiracy).

[9] This is called the "intracorporate conspiracy doctrine." See Nix v. Temple Univ., 596 A2d 1132, 1137 n. 3 (Pa. Super. Ct. 1991).

[10] Defendant also argue, and plaintiffs agree, that if plaintiffs' UTPCPL claim should fail the claim for conspiracy will also fail. Defendant contends that plaintiffs are not entitled to attorneys' fees in connection with their civil conspiracy claim as a matter of law because there is no applicable statute allowing such recovery and the parties do not have a contractual relationship. (Doc. # 15 at 10). Plaintiffs concede that they are not entitled to attorneys' fees unless they are to succeed on the UTPCPL claim. (Doc. #16-2 at 20).

v. Kenny, 952 F.2d 702, 710 (3d Cir. 1991). This is known as the "intracorporate conspiracy doctrine." See General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (applying Pennsylvania law) (citing Heffernan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999)).

In Heffernan, the Third Circuit analyzed the application of the intracorporate conspiracy doctrine in the context of attorney-client conspiracies under 42 U.S.C. § 1985(1) & (2) and held that a conspiracy between a corporation and an officer may exist only "if the officer is acting in a personal, as opposed to official, capacity." Id. at 412. However, the fact that an agent may have acted in bad faith or with the illegitimate purpose of abusing process in mind, does not, in itself, bring the agent's actions outside the scope of the relationship.[11] Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 314 (3d Cir. Pa. 2003).

At this stage of the proceedings, the exact relationship of the parties cannot be ascertained. Accepting the complaint's allegations as true, I will assume for the purposes of this motion that the defendant had a "duty to disclose." Additionally, because it is unclear whether Bennett and Doherty may have been acting outside the scope of employment or acting within the scope of its authority, but in a negligent and fraudulent manner, I will not dismiss the civil conspiracy claim based on the intracorporate conspiracy doctrine at this time. See Lawyers Title Ins. Corp. v. Phillips Title Agency, 361 F.Supp.2d 443 (D.N.J. 2005).

---

[11] It follows that unless an agent is "acting in a purely personal capacity," the intracorporate conspiracy doctrine applies. Sung Tran v. Delavau, LLC, No. 07-3550, 2008 U.S. Dist. LEXIS 39001, 2008 WL 2051992, at *11 (E.D. Pa. May 13, 2008) (citing Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003)).

3. <u>Pleading Fraud with Particularity</u>

Plaintiffs and defendant agree that complaints which allege fraud must comport with Rule 9(b), but disagree as to whether the complaint satisfies the heightened pleading requirements. Rule 9(b) applies "not only to fraud actions under federal statutes, but to fraud claims based on state law." <u>Christidis v. First Pennsylvania Mortg. Trust</u>, 717 F.2d 96, 99 (3d Cir. 1983). Rule 9(b) requires the plaintiff plead "the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."[12] <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting <u>Seville Industrial Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984)).

Plaintiffs allege that they have satisfied the heightened pleading requirements by incorporating by reference all of the state court pleadings. (Doc. # 16-2 at 21). Defendant argues that plaintiffs merely allege what they were "told" and "not told," and they make only general allegations without asserting the specific identity of the people who made false statements or the documents containing the false statements. (Doc. # 14-15 at 15). These details put the defendant on adequate notice of the alleged fraud to enable it to answer the complaint. Accordingly, because the complaint states with particularity the circumstances constituting fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure, I will deny the defendant's motion to dismiss.

---

[12] A complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." See 15 U.S.C. § 78u-4(b)(2); <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 314 (2007).

## V. Conclusion

For the foregoing reasons, I will deny defendants' motion to dismiss Counts I and II of the Complaint without prejudice to be raised again at a later stage in the litigation.

An appropriate order follows.