IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANONA DUFFY, et al., | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LAWYERS TITLE INSURANCE CO., | : | No. 11-4503 |
|     Defendant. | : | |

**M E M O R A N D U M**

**Stengel, J.**                                                                                                                **July 2 , 2012**

      This action was brought against Lawyers Title Insurance Co. for Fraud and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") as the result of a "mortgage rescue scam." Following oral argument, I denied the motion to dismiss pending the resolution of the issue of whether Plaintiffs qualify as "purchasers" under the UTPCPL. The Defendant filed a motion to certify this issue for interlocutory appeal as a question of law, which for the reasons discussed below, I will deny the motion.

**I.**    **Background**

      In their Amended Complaint, plaintiffs allege they are victims of a series of foreclosure rescue scams, described as "equity skimming scams." (Amend. Compl. at ¶ 4). Plaintiffs claim that defendant, Lawyers Title Insurance Co., (hereinafter "Fidelity"),[1] is also the principal, insurer and underwriter of First County Abstract ("First County"),[2]

---

[1] Fidelity National Title Insurance Co. is acting in its own name and the as the entity in which Lawyers Title was merged.

[2] First County Abstract is a fictitious name filed in 2005 with the Commonwealth of Pennsylvania and is to be traded under Bennett & Doherty, P.C. (Amend. Compl. at ¶ 27).

and that these and other parties conspired to steal the equity in Plaintiffs' properties. (Amend. Compl. at ¶¶ 12-15, 17, 36). Specifically, Jeffrey Bennett and Steve Doherty functioned as title agents and as principals of Bennett & Doherty, P.C., a firm acting as an alter ego of and trading as First County.[3] (Amend. Compl. at ¶¶ 17, 25). Essentially, each plaintiff was in the midst of a foreclosure action commenced by their respective lenders when the equity scams took place.[4] (Amend. Compl. at ¶ 12, 29-31).

The Equity Skimming Scam

Plaintiffs allege that they were contacted by someone who told them that they could save their home from foreclosure by refinancing under a third party's name. (Amend. Compl. at ¶ 30). The third party was a "straw party" with good credit to act as the purchaser of the Plaintiffs' residences. Settlement for each transaction was scheduled with Bennett and Doherty, P.C. (Amend. Compl. at ¶ 51, 155, 165). Preceding settlement, First County, through Bennett, issued a preliminary HUD-1, settlement sheet, which set forth costs and showed a "cash-to-seller" payment illustrating the amount of equity in each home. (Amend. Compl. at ¶ 184). This prompted the release of the settlement funds to Bennett and Doherty. (Amend. Compl. at ¶ 168).

---

[3] Plaintiffs were referred to Bennett & Doherty, P.C., a law firm that also traded as title insurance agents for First County, a title insurance company.

[4] Individual plaintiffs include, Anona Duffy (Amend. Compl. at ¶¶ 50-75), John and Marie Iacovetti (Amend. Compl. at ¶¶ 76-88), George and Jorene Devlin (Amend. Compl. at ¶¶ 89-101), Kim Mellus Harak (Amend. Compl. at ¶¶ 102-115), Michael and Joann Lieber (Amend. Compl. at ¶¶ 116-123), Jose and Carmen Ortiz (Amend. Compl. at ¶¶ 124-141), Mark and Beverly Goldman (Amend. Compl. at ¶¶ 142-152), Susan Edge (Amend. Compl. at ¶¶ 153-163), William and Phyllis Kemp (Amend. Compl. at ¶¶ 163-173), and Tracey and John Vogt (Amend. Compl. at ¶¶ 174-183).

After the funds were released, First County, through Bennett, issued a phony final HUD-1, which reduced the proceeds paid to plaintiffs to zero.  (Amend. Compl. at ¶¶ 37, 185, 195).  Lawyers Title Insurance, now Fidelity, issued title insurance through its agents, which insured the lien on the new mortgage.  (Amend. Compl. at ¶ 38, 171).  The proceeds of the new mortgage were then used to pay off the old mortgage and to satisfy other "obligations."  (Amend. Compl. at ¶ 35).  However, many of these obligations were phony, and the payments were diverted to third parties involved in the fraudulent scheme. (Amend. Compl. at ¶ 36).

## II.   Discussion

The parties disagree as to whether plaintiffs purchased a good or service from defendant.  The issue presented in this case is whether a person whose home's equity was allegedly used by one entity to purchase title insurance from a third party makes that person a "purchaser" under the UTPCPL.  The "general purpose of the UTPCPL is to protect the public from fraud and unfair deceptive business practices."  Burke v. Yingling, 666 A.2d 288, 291 (Pa. Super. Ct. 1995).  Courts have generally taken a broad approach to what constitutes a sale or a purchaser under the act.[5]  See e.g., Christopher v. First Mut. Corp., 2008 U.S. Dist. LEXIS 32781 (E.D. Pa. Apr. 21 2008).  The UTPCPL does not define "purchaser," but the statute unambiguously permits only persons who

---

[5] Defendant argued in its motion to dismiss that the plaintiffs are not purchasers under the UTPCPL because plaintiffs were the sellers of property in various real estate transactions and as part of those transactions, Fidelity provided a title insurance policy to J.P. Morgan, not to plaintiffs.  (Doc. #15 at 9).  Plaintiffs argued that funds from their home's equity were used to purchase the title insurance and, therefore, even though they are not the insureds or the beneficiaries, they are indeed the purchasers.  (Doc. # 16 at 12).

have purchased or leased goods or services to sue. Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).

> 28 U.S.C. § 1292(b) sets forth the standard for granting an interlocutory appeal:
>
> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Before a non-final order is certified for interlocutory appeal to the courts of appeals, the district court must determine whether: 1) the order involves a controlling question of law; 2) a substantial ground for difference of opinion exists regarding the correctness of the decision; and 3) an immediate appeal may materially advance the ultimate termination of the litigation.[6] Alexander v. Washington Mutual, Inc., Civil Action No. 07-4426, 2008 U.S. Dist. LEXIS 61256, 2008 WL 3285845, at * 2, (E.D. Pa. August 4, 2008). Section 1292 (b) should be "sparingly" applied, see Milbert v. Bison Laboratories, Inc., 260 F.2d 431, 433 (3d Cir. 1958), and the decision to grant certification is within the court's discretion, even if all three criteria are met. Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976); Knipe v. SmithKline Beecham, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008).

A controlling question of law is one in which either (1) an incorrect disposition would constitute reversible error if presented on final appeal, or, (2) the question is "serious to the conduct of the litigation either practically or legally." In re Chocolate Confectionary Antitrust Litigation, 607 F.Supp.2d 701, 705 (M.D.Pa. 2009) (quoting

---

[6] The party pursuing interlocutory appeal bears the burden to demonstrate that all three of the certification factors have been met. Morgan v. Ford Motor Co., 2007 U.S. Dist. LEXIS 5455, 2007 WL 269806 at *2 (D.N.J. Jan.25, 2007) (citing Caterpillar, Inc. v. Lewis, 519 U.S. 61, 74 (1996)).

Katz v. Carte Blanche Corporation, 496 F.2d 747, 755 (3d Cir. 1974)). "When determining whether an issue presents a controlling question of law, the emphasis is on whether a different resolution of the issue would eliminate the need for trial." Alexander v. Washington Mutual, 2008 U.S. Dist. LEXIS 61256, 2008 WL 3285845, at *3. The Katz court reasoned that among the practical concerns to be considered are saving the time of the district court and minimizing the expense to the litigants. Katz, 496 F.2d at 755.

"Substantial grounds for difference of opinion exist where there is genuine doubt or conflicting precedent as to the correct legal standard." Hall v. Wyeth, Inc., Civil Action No. 10-738, 2010 U.S. Dist. LEXIS 128168, 2010 WL 4925258, at *2 (E.D.Pa. December 2, 2010)(citing Bradburn Parent Teacher Store, Inc. v. 3M, Civ. A. No. 02-7676, 2005 U.S. Dist. LEXIS 15815, 2005 WL 1819969, at *4 (E.D.Pa. August 2, 2005)). The absence of controlling law on a particular issue can also constitute "substantial grounds." Chase Manhattan Bank v. Iridium Africa Corp., 324 F. Supp. 2d 540, 545 (D. Del. 2004). Finally, a § 1292(b) certification "materially advances the ultimate termination of the litigation" where the interlocutory appeal eliminates: "(1) the need for trial; (2) complex issues that would complicate the trial; or (3) issues that would make discovery more costly or burdensome." Litgo New Jersey, Inc. v. Martin, 2011 U.S. Dist. LEXIS 31869, 2011 WL 1134676 at *3 (D.N.J. 2011).

Defendants claim that the absence of case law on the issue of who is the "purchaser" of title insurance under the UTPCPL has created an "unjust environment." They argue that all three criteria for appeal are satisfied. The issue involves a controlling

5

question of law because unless Plaintiffs can establish purchaser status the entire case must be dismissed for lack of standing.  Defendants also argue that there is substantial ground for difference of opinion because there is an absence of controlling case law.  Finally, they contend that the resolution of the issue in Defendant's favor would result in the ultimate termination of this litigation and will save both parties a substantial amount of money and time.

Plaintiffs argue that the court did not use language in its order that allowed for an interlocutory appeal and Defendants submitted this brief two months after the denial of their motion to dismiss asking the court to reconsider the language in the memorandum.  Additionally, the Plaintiffs rely on well-supported language, which is cited in the court's memorandum, that the UTPCPL has a broad general purpose and the term purchaser is to be interpreted broadly within that purpose.

This litigation is centered on the whether Plaintiffs can be considered "purchasers" under the UTPCPL.  If they are not met, Plaintiff cannot establish a prima facie case under the UTCPL.  Additionally, if the Federal claim fails, the Court will have no jurisdiction to hear the state law claim and it too must be dismissed.  Given these circumstances, the first element has been satisfied.

The Third Circuit, while indicating the word "purchaser" should be interpreted broadly, has yet to rule on the issue.  Neither party has cited — nor has this Court found — any other judicial opinion, arising either on the appellate or district court level, discussing this issue.  The absence of any persuasive or controlling law on this issue is sufficient to establish a "difference of opinion."  Finally, immediate appeal would

materially advance the litigation to this case because a trial would not be necessary if the Court of Appeals determines that Plaintiffs do not qualify as "purchasers" under the UTPCPL.

Although the defendants have shown that the question meets all three prongs of 28 U.S.C. § 1292(b), courts still have discretion concerning whether to certify the question for appeal.  The fact that there is an issue of first impression for the Third Circuit does not justify an interlocutory appeal.  Larsen v. Senate of Comm. of Pa., 965 F. Supp. 607, 609 (M.D. Pa. 1997).  In this case, the motion is premature.  The case is in the early stages of discovery, and the motion to dismiss was denied without prejudice to submit a renewed motion, if one was warranted in light of the facts obtained through further discovery.  The first inquiry is not whether Plaintiffs are "purchasers" under the act, but whether the equity in their homes was used to purchase the title insurance.  This is a factual inquiry that requires discovery.  The Order denying the motion to dismiss noted that through discovery, the parties must determine what funds were used to purchase the title insurance.  Defendants' request for an interlocutory appeal, and related motion to stay this action pending the outcome of the Third Circuit's opinion, is therefore denied.

### III. Conclusion

For the reasons set forth above, I will deny the Defendants' Motion for Certification of my February 23, 2012 Order.  After the parties build a factual record on the issue of whose funds were used to purchase the insurance, this issue can be raised again in a motion for summary judgment.